**Abraham GARFINKEL, Robert B. Rosenberg, David S. Levy, Richard Goodwin, and Christine Rappoport, Plaintiffs,**

v.

**MEMORY METALS, INC., Neil E. Rogen, L. McDonald Schetsky, and Stephen M. Fisher Defendants.**

**Civ. No. B–86–488 (WWE).**

United States District Court,
D. Connecticut.

Sept. 19, 1988.

Stanley M. Grossman, Marc I. Gross, Shaheen Rushd, Pro Hac Vice, Pomerantz, Levy, Haudek, Block & Grossman, New York City, Nicholas A. O'Kelley, Andrew M. Schatz, Julianne Splaine, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., Elkan Abramowitz, Pro Hac Vice, Obermaier, Morvillo & Abramowitz, P.C., New York City, for plaintiffs.

Peter L. Truebner, Mark S. Gregory, Taggart D. Adams, Robert A. Horowitz, Kelley, Drye & Warren, Stamford, Conn., for Memory Metals, Inc.

Richard F. Lawler, Whitman & Ransom, Greenwich Conn., Michael S. Press, Pro Hac Vice, Whitman & Ransom, New York City, Jacob D. Zeldes, David P. Atkins, Zeldes, Needle & Cooper, Bridgeport, Conn., Milton S. Gould, Frank C. Razzano, Peter C. Neger, Shea and Gould, Pro Hac Vice, New York City, Matthew B. Goods, Philip Baroff, Gladstone, Schwartz, Baroff & Blum, Bridgeport, Conn., Irving Parker, William Lasher, Pro Hac Vice, Jacobs, Persinger & Parker, New York City, for defendants Neil E. Rogen and McDonald Schetky.

## RULING ON MOTION FOR CLASS CERTIFICATION

EGINTON, District Judge.

This securities action was commenced on October 7, 1986 by Abraham Garfinkel, a purchaser of common stock of Memory Metals, Inc. ("Memory Metals"), against Memory Metals and several of its current and former officers and directors. On divers dates, the court consolidated into this action three similar suits filed by Robert B. Rosenberg on October 15, 1986 (B–86–501), by David S. Levy on December 9, 1986 (B–86–610), and by Richard C. Goodwin on February 9, 1987 (B–87–73).[1]

The consolidated complaint alleges that the defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Ex-

---

**1.** Shortly after commencing suit, Plaintiff Abraham Garfinkel withdrew his complaint; Christine Rappaport intervened as a putative class plaintiff in July of 1987.

change Act"), 15 U.S.C. § 78j(b),[2] § 20(a) of the Exchange Act, 15 U.S.C. 78t(a),[3] and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. § 240.10b–5,[4] by engaging in a course of fraudulent conduct whereby material misstatements were made and material information omitted regarding Memory Metals' financial condition and prospects. The plaintiffs have also alleged pendent common law claims of fraud, deceit and negligent misrepresentation.

This matter is now before the court on the plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The plaintiffs seek to represent a class defined to include all persons who purchased Memory Metals common stock between February 12, 1986 and September 26, 1986 inclusive (the "class period"). For the reasons discussed below, the plaintiffs' motion for class certification is granted.

## I. FACTUAL BACKGROUND

The consolidated complaint sets forth the following facts: Defendant Memory Metals, is a Delaware corporation based in Stamford, Connecticut. In 1986, its common stock was publicly held and traded on the NASDAQ Supplemental over-the-counter market. The company was primarily engaged in the research and development of products which use shape memory effect ("SME") actuators. SME alloys have the ability to undergo a shape transformation at selected temperatures and then return to their original shape. They are capable of bending, straightening, expanding, and contracting. As they change shape, substantial energy is released which can be used to power a variety of objects.

At relevant times, Defendant Neil E. Rogen ("Rogen") was the Chief Executive Officer of Memory Metals and Chairman of its Board of Directors. During portions of the relevant period, Rogen also served as Memory Metals' principal financial officer. Defendant L. McDonald Schetky ("Schetky") was President and Chief Scientist of the company, and a member of its board. Defendant Stephen M. Fisher ("Fisher") was Vice President and Chief Operating Officer of Memory Metals.

The plaintiffs allege that prior to the class period, Memory Metals was an unprofitable company without any major production contracts for its SME products. The plaintiffs also allege that commencing on or about February 12, 1988 and continuing throughout the class period, the defendants entered into a scheme and common course of conduct to present a false and misleading picture of Memory Metals' true business condition and prospects to the investing public.

2. Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
(b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. Section 20(a) provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such con-

trolled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

4. Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud.
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Specifically, the plaintiffs allege that the defendants issued press releases, which were publicly disseminated, announcing, *inter alia*, that production of some new SME products was expected in the near future; that potential sales of the new SME products were enormous; that lucrative development and production contracts had been entered into with such major companies as Westinghouse, Martin Marietta, and Siemens Energy; and that the company would generate $1.3 million in profits on $16 million in sales by the middle of 1987.[5] Moreover, it is alleged that the defendants failed to disclose material information to shareholders, such as a previous securities fraud action brought against Defendant Rogen by the SEC in connection with another company Rogen had founded.

The plaintiffs claim that as a result of these misleading statements and omissions of material information, the price of Memory Metals common stock increased in a short period of time from $4.00 per share to a high of $16.75 per share. The plaintiffs further claim that some of the individual defendants took advantage of this sudden price increase by selling substantial amounts of Memory Metal stock on the open market during the class period, thereby reaping large personal profits.[6]

On September 10, 1986, the plaintiffs allege, Memory Metals admitted the misleading nature of the prior statements by issuing a curative press release acknowledging, *inter alia*, that the company had no orders for any of its new products, and that none of its "production" contracts actually required customers to purchase SME products developed by Memory Metals.[7] Following the dissemination of these corrective statements in September of 1986, the price of Memory Metals stock declined to the $6.00–$7.00 per share range, a 33% decline from the predisclosure levels, and a 60% decline from highs during the class period. The plaintiffs claim to have been damaged as a result of their reliance on the defendants' material misrepresentations and omissions or on the integrity of the market for Memory Metals stock when deciding to purchase their stock.

The class which the plaintiffs seek to certify is:

All persons who purchased Memory Metals, Inc. common stock between February 12, 1986 and September 26, 1986, inclusive, and who were damaged thereby, excluding defendants, Pericles Constantinou, Irwin Hyman, William Rodman and Memory Metals officers, directors, employees and members of their immediate families.[8]

The defendants oppose class certification on the ground that the putative class fails to meet the requirements set forth in F.R. Civ.P. 23.

## II. DISCUSSION

Although Rule 23 is to be construed liberally, *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir.1968), all the require-

---

5. By way of example, the plaintiffs point out that on February 12, 1986, Memory Metals issued a press release in which it announced its "first major production contract" with industry. Pursuant to this contract, Memory Metals reportedly would:

design, produce a prototype, develop then subsequently manufacture under five year exclusive license, a shape memory effect ("SME") element to be incorporated in Westinghouse's power transformer circuit breakers.

The plaintiffs submit that in order to "underscor[e] the purported monetary value of this contract," Memory Metals represented that the "total industry-wide market for power transformer circuit breakers is estimated to be a million-plus units a year. Westinghouse Electric is the principle factor in the industry."

6. It is alleged that "Defendant Schetky sold at least 165,000 shares of Memory Metals stock during the class period for more than $1,300,000," and further, that "between February 12, 1986 and August 20, 1986, Defendant Rogen sold at least 218,000 shares of Memory Metal common stock, netting over $2,000,000."

7. The plaintiffs claim, however, that the September 10, 1986 curative press release continued to omit material information, such as the previous fraud action brought against Defendant Rogen by the SEC and insider selling of Memory Metals stock during the class period.

8. The reason that the plaintiffs seek to exclude Irwin Hyman, William Rodman, and Pericles Constantinou from the class will be discussed *infra*.

ments of that rule must be met in order for the court to certify a class. In this case, the plaintiffs have premised their class certification motion on Rule 23(b)(3), F.R.Civ. P.[9] To maintain a 23(b)(3) class action, the court must find that the prerequisites set forth in Rule 23(a)[10] are met *and* that 1) common questions of fact or law predominate and 2) a class action is superior to other methods of adjudication. The court will now consider each of these prerequisites *seriatim.*

## A. *Numerosity*

■ Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. In their consolidated complaint, the plaintiffs allege that several million shares of Memory Metals common stock were traded during the class period; and that persons who purchased Memory Metals shares during the class period number in the hundreds, if not thousands, and are located throughout the country.

The defendants argue that the numerosity requirement has not been met because the plaintiffs have failed to specify the number of putative class members. This argument is unpersuasive because putative class "plaintiffs need not demonstrate with precision the number of persons in the purported class to satisfy the requirement that joinder be impracticable where such a conclusion is clear from reasonable estimates." *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178, 1190 (S.D.N.Y.1982). In securities fraud actions brought against pub-

licly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period. *Kallus v. General Host Corp.,* No. B–87–160, slip op. at 4 (D.Conn. June 30, 1988) [available on WESTLAW, 1988 WL 124074]; *Klein v. Becker Paribas Inc.,* 109 F.R.D. 646, 649 (S.D.N.Y.1986); *Brady v. Lac, Inc.,* 72 F.R.D. 22, 27 (S.D.N.Y.1976).

In the instant case, the plaintiffs have demonstrated that 17,965,125 shares of Memory Metals stock were outstanding and traded in the over-the-counter market during the proposed class period. (Plaintiffs' Exhibit G). The plaintiffs have also shown that as of December 17, 1986, Memory Metals had approximately 614 shareholders of record according to the Form 10–K filed by Memory Metals with the SEC. (Plaintiffs' Exhibit P). In light of the large number of investors who purchased Memory Metals stock during the proposed class period, the court finds that joinder of such investors is clearly impracticable.

It is the defendants' position that the plaintiffs have not sufficiently shown the required numerosity in a market for stock that was fraudulently manipulated by certain individual investors who are not parties to this action. What the defendants are referring to is a false trading scheme in Memory Metals stock engaged in by William Rodman, Irwin Hyman, and their co-conspirators. In 1987, both Rodman and Hyman were charged and pled guilty to

---

**9.** Rule 23(b)(3) provides:

> **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> (3) the court finds that the questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to *other available methods* for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of con-

centrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

**10.** Rule 23(a) provides:

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if
>
> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of class, and (4) the representative parties will fairly and adequately protect the interests of the class.

securities fraud in the Southern District of New York in connection with that fraudulent trading scheme.[11] (Defendants' Exhibits A and C). The defendants' argument attacking the numerosity requirement on this basis is disingenuous—just because fraudulent trades may have been executed by Rodman and Hyman during the proposed Class Period does not mean that there were not large numbers of legitimate investors trading Memory Metals stock during the same period.

Accordingly, the court finds that the plaintiffs have satisfied the initial requirement of Rule 23.

### B. *Commonality and Predominance*

■ Rule 23(a)(2) requires that there be questions of law or fact common to the members of the class, and Rule 23(b)(3) requires that these common questions of law and fact predominate over any questions affecting only individual members. The plaintiffs urge class certification on the ground that the defendants engaged in a common and continuing scheme to defraud plaintiffs and the class they seek to represent. More specifically, the plaintiffs allege that common questions of law and fact exist as to: 1) whether defendants knowingly or recklessly made false statements or omissions about the financial condition of Memory Metals; 2) whether the false statements and omissions were material; and 3) whether the misstatements inflated the price of Memory Metals stock, thus damaging plaintiffs and the class.

■ An alleged "common course of conduct" is sufficient to satisfy the common question requirement of F.R.Civ.P. 23(a)(2). *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Seidman v. Stauffer Chemical Corp.*, [1986–87 Transfer Binder]

Fed.Sec.L.Rep. (CCH) Para. 92,868, at 94,-231–32 (D.Conn.1986) [available on WESTLAW, 1986 WL 9803].

The defendants argue that individual questions predominate over any common questions of law and fact because each individual class member must prove actual reliance on the alleged material misrepresentations. Reliance is the element of a Rule 10b–5 action that establishes the causal nexus between the defendant's wrongful conduct and the plaintiff's loss. *Basic, Inc. v. Levinson*, —— U.S. ——, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988). In certain situations, where proof of actual reliance would be impractical or impossible, courts have applied a presumption of reliance. One such situation involves material public misrepresentations that distort the price of stock on the open market, in other words, a fraud on the market. In *Basic, supra*, the Supreme Court explained that the fraud on the market theory is

> based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic, supra*, 108 S.Ct. at 988–89 (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160–61 (3rd Cir.1986)).

The *Basic* Court held that the district court, in certifying a class action, properly applied a rebuttable presumption that the putative class members had relied on the integrity of the market in deciding to sell their stock in defendant corporation, rather than requiring each class member to show direct reliance on defendants' statements.

---

**11.** Although the Rodman and Hyman indictments refer only to unnamed co-conspirators, Pericles Constantinou was named as a co-conspirator by the Government at Rodman's plea hearing on April 16, 1987. (Plaintiffs' Exhibit J appended to Plaintiffs' Reply Brief). Therefore, the plaintiffs seek to exclude Constantinou, in addition to Rodman and Hyman, from the putative class.

*Basic, supra,* 108 S.Ct. at 991–92. Justice Blackmun, writing for the majority, reasoned: "Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented [the plaintiffs] from proceeding with a class action, since individual issues would then have overwhelmed the common ones." *Basic, supra,* 108 S.Ct. at 989.

In our case, the plaintiffs claim to have relied on the integrity of the open market when deciding to purchase their Memory Metals' stock, thereby invoking the fraud on the market theory and its presumption of reliance. The defendants contend that the plaintiffs should be precluded from utilizing that theory's presumption of reliance because of the plaintiffs' failure to prove an essential element of that theory—an "efficient" market for Memory Metals stock.[12] Specifically, the defendants assert that the market for Memory Metals' stock was not "efficient" because of the criminal manipulation of the stock by investors Hyman and Rodman and their co-conspirators. Moreover, it was this criminal manipulation, maintain the defendants, that caused the upsurge in Memory Metals stock during the proposed class period, not the press releases issued by the defendants.

The court finds these arguments to be without merit. First, in determining whether a suit should proceed as a class action, the Supreme Court has cautioned lower courts against conducting a preliminary inquiry into the merits of the action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *see also Dura–Bilt Corp. v. Chase–Manhatten Corp.,* 89 F.R.D. 87, 94 (S.D.N.Y.1981).

■ Apparently, the defendants are familiar with that rule of law, *see* Defendants' Brief at 17, n. 6, yet they urge the court to deny class certification based on a finding that a fraudulent trading scheme engaged in by certain investors rendered the market for Memory Metals stock inefficient. Whether Memory Metals stock was traded on an "efficient" market and whether the sudden price increase in Memory Metals stock was caused by defendants' alleged misstatements or the fraudulent trading scheme engaged in by Rodman and Hyman go directly to the merits of the case and thus should not be decided at this juncture. For purposes of class certification, the plaintiffs' allegation that an "efficient" market was operating regardless of the false trading scheme is sufficient. "The mere fact that the proof could be difficult does not preclude the opportunity to make the presentations at trial." *Levinson v. Basic, Inc.,* 786 F.2d 741, 751 (6th Cir.1986), *vacated,* —— U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).[13]

12. Under the fraud on the market theory, in addition to establishing that securities were traded on an "efficient market", a plaintiff must prove:

> 1) that the defendants made public misrepresentations, 2) that the misrepresentations were material, 3) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the stock, and 4) that the plaintiff traded in the stock between the time the misrepresentations were made and the time the truth was revealed.

*Levinson v. Basic, Inc.,* 786 F.2d 741, 750 (6th Cir.1986), *vacated,* —— U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

13. Assuming, *arguendo,* that the market for Memory Metals stock were not "efficient" making the fraud on the market theory's presumption of reliance inapplicable here, individual questions of reliance still would not be sufficient to defeat class certification. Justice Blackmun's observation to the contrary, quoted above (p. 1402) from *Basic,* is dictum and not the law in this circuit. *See Korn v. Franchard Corp.,* 456 F.2d 1206, 1212–13 (2d Cir.1972); *Green v. Wolf Corp., supra,* 406 F.2d at 301; *Seidman, supra,* Para. 92, 868, at 94,232; *Kamerman v. Ockap Corp.,* 112 F.R.D. 195, 198 (S.D.N.Y.1986).

In rejecting the argument that individual questions of reliance predominate, the Second Circuit has observed:

> Carried to its logical end, it would negate any attempted class action under Rule 10b–5, since as the District Courts have recognized, reliance is an issue lurking in every 10b–5 action.

*Green v. Wolf Corp., supra,* 406 F.2d at 301; *see also Biben v. Card,* [1985–86 Transfer Binder] Fed.Sec.L.Rep. (CCH) Para. 92,462, at 92,827 (W.D.Mo.1986) [available on WESTLAW, 1986 WL 1199] ("any other result would have the practical effect of eliminating the class action device as a possible way of handling most complex securities fraud cases").

Second, the issue of the "efficiency" of the market for Memory Metals stock raises a number of issues which are common to all potential class members and can best be tried together. In addition to the "efficiency" of the market, the presence or absence of scienter, and the materiality of the misrepresentations, if any, are questions common to all members of the putative class. *See Fisher v. Plessey Co., Ltd.*, 103 F.R.D. 150, 155–57 (S.D.N.Y.1984). Since these common issues clearly overwhelm any issues affecting only particular individuals, the court concludes that the predominance requirement of Rule 23(b)(3) has been satisfied.

## C. *Typicality*

For a suit to be certified as a class action, the claims of the named class representatives must be typical of those of the class members. Rule 23(a)(3), F.R.Civ.P. Generally, a class representative must show that his claims arise from the same event or practice or course of conduct that gives rise to the claims of the other class members, and that the claims are based upon the same legal theory. *Fisher, supra,* 103 F.R.D. at 159; *Dura–Bilt, supra,* 89 F.R.D. at 99. However, "typicality does not call for precise identity between the claims of the class and those of its would-be representative[s]." *McKernan v. United Technologies Corp.,* 120 F.R.D. 452, 454 (D.Conn.1988).

In the instant case, the plaintiffs allege that they purchased Memory Metals stock at a price artificially inflated by the defendants' material misstatements and omissions. As Chief Judge Daly found in a similar case: "To the extent that all purchasers throughout the class period share a common interest in proving plaintiffs' allegation[s], this is sufficient to make the claims of the class representatives typical of those of the class members." *Seidman, supra,* para. 92,868, at 94,233.

■ The defendants challenge the plaintiffs' ability to satisfy the typicality requirement on several grounds. The defendants first assert that Plaintiff Goodwin's claim is atypical of those of the proposed class and subject to a "unique" defense because Goodwin purchased additional shares of Memory Metals stock on September 29, 1986, after the corrective press release was issued. Plaintiff Goodwin testified that his September 29th purchase of Memory Metals stock was made to average his acquisition costs, and that at the time of such purchase, he was unaware of the corrective press release that Memory Metals had issued on September 10, 1986. (Goodwin Dep. at 45). In *Kronfeld v. Trans World Airlines, Inc.,* 104 F.R.D. 50, 53 n. 4 (S.D.N.Y.1984), the court concluded that the subsequent purchase of stock by the plaintiff did not render his claim atypical, reasoning that the "subsequent purchase is . . . a common investment technique used to decrease the average cost of the investment." Given these circumstances, the court is not convinced that Mr. Goodwin's claim is sufficiently atypical to deny him class representative status.

■ The defendants' next argument is that the claims of three proposed class representatives—Rosenberg, Rappoport, and Levy—are atypical because they relied not on the alleged misleading press releases issued by Memory Metals when purchasing their stock, but on various other sources. The defendants point out that Plaintiff Rosenberg relied on his stockbroker's recommendation to buy Memory Metals stock; Plaintiff Rappoport relied on her husband's advice; and Plaintiff Levy relied on a favorable newspaper account regarding the company.

Such derivative reliance, however, does not render these plaintiffs' claims atypical. As the court observed in *Kronfeld, supra,* 104 F.R.D. at 53:

> Reliance on third parties such as investment counselors or knowledgeable family members is likely to be typical, rather than atypical, of the circumstances under which a substantial number of class members purchased their stock.

*See also Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981), *vacated as moot sub nom. Price Waterhouse v. Panzirer,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982); *Steiner v. Equimark Corp.,* 96

F.R.D. 603, 609–10 n. 13 (W.D.Pa.1983). Furthermore, as discussed above, under the fraud on the market theory, the requirement that plaintiffs prove direct reliance has been eliminated. *Blackie,* supra, 524 F.2d at 907. In sum, reliance on the advice of others does not render plaintiffs atypical class representatives.

### D. *Adequacy of Representation*

Another prerequisite to the maintenance of a class action is the requirement that the class representatives "will fairly and adequately protect the interests of the class." Rule 23(a)(4), F.R.Civ.P. The purpose of the adequacy requirement, as of the typicality requirement, is to protect the legal rights of absent class members who are bound by the resulting judgment under the doctrine of *res judicata. Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir.1985), *cert. denied,* 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). In determining whether the adequacy requirement has been met, the court must consider two elements:

> 1) whether there is a potential conflict between the named plaintiffs and the absent class members, and 2) vigorous prosecution of the action by the representative party which entails that the party's attorney be qualified, experienced, and generally capable of conducting the litigation.

*Klein, supra,* 109 F.R.D. at 651 (citations omitted). *See also In re Gulf Oil/Cities Service Tender Offer Litigation,* 112 F.R.D. 383, 387 (S.D.N.Y.1986) ("the interests of the class representatives should coincide with those of the class members they seek to represent, and the class representatives and their attorneys must vigorously and competently prosecute the action").

In the instant case, the defendants have not specified any conflicting interests between the plaintiffs and the unnamed class members,[14] nor have they challenged the adequacy of plaintiffs' counsel. Rather,

the defendants assert that three proposed class representatives are inadequate as class representatives for reasons of ill health and advanced age, lack of character, lack of time and energy due to involvement in other lawsuits, and insufficient knowledge of the nature of the claims. Bearing in mind that "the recent trend in this district is to assess the adequacy of the representative's attorney rather than the personal qualifications of the named plaintiff," [15] *Klein, supra,* 109 F.R.D. at 651, and that "[t]he class representatives need not be the best of all representatives, but one[s] who will pursue a resolution of the controversy in the interests of the class," *Dura–Bilt, supra,* 89 F.R.D. at 101, the court finds, on the present record, that the plaintiffs are adequate to represent the class.

### E. *Superiority of Class Action*

■ The final requirement of Rule 23 is "that a class action be superior to other methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3), F.R.Civ.P. A class action is the most efficient means of litigating a securities fraud suit where the class "consists of numerous investors, many of whom in all likelihood have individual claims too small to warrant an individual suit." *Klein, supra,* 109 F.R.D. at 653; *see also Ridings v. Canadian Imperial Bank,* 94 F.R.D. 147, 150 (N.D. Ill.1982) ("securities fraud cases are uniquely suited to class action treatment since the claims of individual investors are often too small to merit separate lawsuits"). In view of the numerous investors who purchased Memory Metals stock during the class period, the relatively small amount of damages sought by each plaintiff, and the defendants' failure to contest superiority, the court finds that the proposed class action is the best method of adjudicating this matter.

### III. CLASS DEFINITION

■ The plaintiffs seek to terminate the proposed class period on September 26,

---

**14.** To the extent that the defendants have contended that there are conflicts of interest between the plaintiffs and the unnamed class members, those contentions have been dealt with in Section IIC, *supra.*

**15.** In this regard, the court finds that plaintiffs' counsel are experienced and competent in prosecuting complex class action litigation.

1986, the last trading day before an article appeared in *Barron's* discussing at length the contents of the corrective press release issued by Memory Metals on September 10, 1986, insider trading in Memory Metals stock, and the prior SEC action against Defendant Rogen. The defendants object contending that the proposed class period should be terminated on September 10, 1986, the actual date that the corrective statement was issued by the company. In considering the proper scope of the class period in a securities fraud action, the Third Circuit enunciated the following test:

> In determining the termination of the class period in a securities class action based upon material misrepresentations and omissions to the investing public, the test is that "liability under the securities acts is terminated when curative information is publicly announced or otherwise effectively disseminated." (citations omitted).
>
> \*   \*   \*   \*   \*   \*
>
> [I]f a substantial question of fact exists as to whether the release had cured the market or was itself misleading, then the broader time period will be certified (citations omitted). In analyzing whether the disclosure of information was "curative", the court should consider the content of the disclosure in question and their effect upon the market price.

*In re Sunrise Securities Litigation,* [1987 Transfer Binder] Fed.Sec.Rep. (CCH) Para. 93,332, at 96,688 (E.D.Pa.1987) [available on WESTLAW, 1987 WL 19343].

To support their contention that the curative press release was not effectively disseminated until September 26, 1986, the plaintiffs point out that: 1) a *Wall Street Journal* article dated September 19, 1986, which discussed SME technology and Memory Metals, failed to mention the corrective press release made by the company on September 10, 1986; 2) the named plaintiffs were not aware of the September 10th corrective statement until they read the *Barron's* article; and, 3) there was a sharp decrease in the price of Memory Metals stock on September 29, 1986, the first trad-

ing day after the *Barron's* article was published.

Since the market required time to assimilate the information contained in the corrective press release, *Klein, supra,* 109 F.R.D. at 653, the proper termination date of the class period appears to be that proposed by the plaintiffs, September 26, 1986.

## IV. CONCLUSION

For the foregoing reasons, the plaintiffs' motion is hereby GRANTED and the class as defined by the plaintiffs with all its exclusions, *see* Plaintiffs' Reply Brief at 54, is hereby certified. Plaintiffs Rosenberg, Levy, Goodwin, and Rappoport are certified as class representatives. Under Rule 23(c)(1), F.R.Civ.P., this determination may be altered or amended at anytime before a decision on the merits. The plaintiffs shall submit to the court a proposed form of notice to the class members pursuant to Rule 23(c)(2), F.R.Civ.P., on or before October 17, 1988. The defendants may file a response to plaintiffs' proposed form of notice within ten (10) days thereafter.

SO ORDERED.