**Bobby S. SIMPSON, etc., Plaintiff,**

**v.**

**SPECIALTY RETAIL CONCEPTS,
et al., Defendants.**

No. C–88–100–WS.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Jan. 14, 1993.

See also, 121 F.R.D. 261, 823 F.Supp. 353.

Martha A. Geer, Raleigh, NC, for plaintiff.

Norman L. Sloan, George S. Thomas, Wesley Bailey, Stephen M. Russell, Winston–Salem, NC, James T. Williams, Jr., Robert A. Singer, Mack Sperling, Greensboro, NC, John Van Zandt, III, Weston P. Hatfield, Winston–Salem, NC, for defendants.

## MEMORANDUM OPINION

TILLEY, District Judge.

Plaintiff Bobby Simpson ("Simpson") filed this lawsuit against Defendants Specialty Retail Concepts, Inc. ("SRC"), Alan R. Kleinmaier, David N. Kleinmaier, C. Banks Finger, Stuart F. Vaughn, and Deloitte, Haskins & Sells ("DH & S") (collectively referred to as "Defendants") alleging federal and North Carolina securities violations and certain state claims in connection with the purchase

of common stock of the Defendant SRC. Pursuant to Fed.R.Civ.P. 23, Simpson has moved for class certification against all the defendants except SRC [1]. DH & S vigorously resists this motion. For the reasons stated hereinafter, Simpson's class certification motion will be GRANTED.

## I.

When considering a class certification motion, the allegations of the complaint must be taken as true. *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). *See Kirschner* 139 F.R.D. at 81. Taking the allegations of the third amended complaint as true, the facts may be stated as follows:

SRC, a company whose stock is publicly traded on NASDAQ, is a national franchisor and owner of specialty food-related retail stores located in enclosed shopping malls. SRC's 1986 Annual Report and 10–K [2] included financial statements, certified by SRC's independent auditor DH & S, inaccurately reporting the 1986 fiscal year net income to be significantly higher than it had actually been. A similar disparity in reported and actual income occurred for fiscal year 1987 as well.

In September 1987, DH & S notified the Securities and Exchange Commission ("SEC") that it had resigned as SRC's auditor and the 1986 financial statements should not be relied upon. Allegedly, the other defendants attempted to minimize the significance of DH & S's notification, suggesting that DH & S's concerns were insubstantial.

It was ultimately revealed by SRC in December 1987, that during 1986 and 1987, defendants had substantially inflated the value of company-owned retail stores and misrepresented the collectibility of certain accounts and notes receivable. It is alleged that DH & S knew or was reckless not to know of the deceptions when the misrepresentations were first made in the 1986 financial statements. It is further alleged that DH & S had actual knowledge of the inaccuracy of the 1986 financial statements in early 1987 (no later than April 1987), but kept silent until August 1987.[3] On December 30, 1987, SRC issued a press release disclosing for the first time SRC's true financial condition. Three months later, SRC filed for bankruptcy.

Simpson filed this lawsuit in February 1988. In his third amended complaint, Simpson alleges that all the defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5; § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2); § 18 of the Exchange Act, 15 U.S.C. § 78r; North Carolina Securities Act, §§ 78A–8 and 78A–56; and that each defendant is also liable under North Carolina common law for the tort of negligent misrepresentation. In addition, Simpson alleges that DH & S is liable for the common law tort of negligent accounting and auditing. Finally, Simpson alleges that the individual defendants violated § 15 of the Securities Act, 15 U.S.C. § 77*o*; § 20 of the Exchange Act, 15 U.S.C. 78t; aided and abetted in the violations of federal securities laws; and breached their fiduciary duties.

Simpson has moved for class certification against all defendants except SRC. He seeks to represent all individuals, excluding SRC, its subdivisions, affiliates, and divisions, and the individual defendants and their immediate families, who purchased shares of SRC common stock during the period from February 10, 1986, through December 29, 1987. February 10, 1986 is the date that Simpson first bought his stock in SRC. December 30, 1987 is the date that SRC issued a press release disclosing for the first time SRC's true financial condition.

DH & S has resisted this motion, arguing that Simpson is not an adequate representa-

---

1. SRC filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code.

2. "10–K" represents the name of the annual report required by the Securities and Exchange Commission of almost all publicly-held corpora-

tions. The 10–K contains more information than the annual report to stockholders.

3. By letter dated July 31, 1987, DH & S resigned as SRC's auditor and disavowed its 1986 financial statements. This event was covered in the both the national and local media.

tive because he is subject to unique defenses and that Simpson's theories of recovery fail to meet the commonality required of class claims.

## II.

It is well-recognized that alleged violations of federal securities laws are particularly well suited for class action proceedings and that Rule 23 is to be construed liberally to effectuate that end. *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3rd Cir.1970), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2nd Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 77 (D.Md.1991).

To maintain a class action, the Court must find that the four prerequisites set forth in Rule 23(a) and at least one of the requirements enumerated in Rule 23(b) are met. Rule 23(a) states that one or more members of a class may sue or be sued as representative parties of all only if: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and, 4) the representative parties will fairly and adequately protect the interests of the class. In order to met the Rule 23(b) requirements, Simpson argues that this case qualifies for certification under both subsection 23(b)(1) and 23(b)(3). Subsection 23(b)(3) requires that common questions of fact or law predominate and that a class action be superior to other methods of adjudication. Because the Court finds Rule 23(b)(3) dispositive, only the issues under that subsection will be analyzed.

### A. Numerosity

■ To meet the numerosity requirement, a plaintiff " 'need not demonstrate with precision the number of persons in the purported class to satisfy the requirement that joinder be impracticable where such a conclusion is clear from reasonable estimates.' " *Garfinkel v. Memory Metals, Inc.*, 695 F.Supp. 1397, 1401 (D.Conn.1988) (quoting *Deary v. Guardian Loan Co., Inc.*, 534 F.Supp. 1178, 1190

(S.D.N.Y.1982)). *See also In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D.Md.1991). In securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement has been met by a showing that a large number of shares were outstanding and traded during the relevant period. *See e.g. Garfinkel*, 695 F.Supp. at 1401; *Gavron v. Blinder Robinson & Co., Inc.*, 115 F.R.D. 318, 322 (E.D.Pa.1987) (number of shares outstanding plus number of shares traded and number of shareholders sufficient evidence of numerosity); *Hawk Indus., Inc. v. Bausch & Lomb, Inc.*, 59 F.R.D. 619, 623 (S.D.N.Y.1973) (number of transactions is sufficient indication that number of potential class members is large enough to satisfy numerosity requirement).

SRC's 10–K for the fiscal year 1986 reflects that as of May 31, 1986, SRC had 396 stockholders and there were 1,694,550 shares of common stock outstanding on August 22, 1986. In its 10–K for the fiscal year 1987, SRC reported that there were 381 shareholders as of May 31, 1987, and that there were 1,865,128 shares of common stock outstanding on August 22, 1987. Furthermore, Standard & Poor's reported in its December 1987 stock reports that SRC's trading volume exceeded 500,000 for the period February 1986 through April 1987. Based on the foregoing, SRC did have a substantial number of stockholders during the proposed class period. In addition, there was a substantial amount of trading of SRC stock during the proposed time period. This combination of a large number of shareholders and a substantial number of purchases of SRC stock is sufficient to establish numerosity as required by Rule 23(a)(1).

### B. Commonality

■ The commonality requirement of Rule 23(a)(2) has been applied permissively by the courts in the context of securities fraud litigation. *See Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D.Pa.1989). For example, in the § 10b–5 context, misrepresentations in annual reports, interim reports, and press releases have been found to satisfy the common question requirement. *See Blackie*, 524 F.2d

at 902. In ascertaining whether Simpson satisfies the commonality requirement, the court must not consider the merits of the substantive claims. *Moskowitz,* 128 F.R.D. at 629. The court must only verify the existence of common questions of law or fact for each claim to be certified.

### 1.

 In order to establish a prima facie case under § 10b and Rule 10b–5, a plaintiff must plead and prove (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which plaintiff reasonably relied, and (5) which was the proximate cause of the losses sustained. Similarly, § 12(2) provides a remedy for a person purchasing a security from one who offers or sells the security and makes a false material statement or omits material facts necessary to make the statement not misleading. Section 18 provides a remedy for false or misleading statements contained in a document filed with the SEC. The person making the statement is liable "to any person ... who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement." § 18, 15 U.S.C. § 78r. Section 15 of the Securities Act, and § 20 of the Exchange Act, makes every person who, directly or indirectly, controls any person liable under each respective sections' corresponding provision liable, jointly and severally.

 All of the federal claims alleged by Simpson contain elements that would be common to the class. These include allegations that there were material omissions and misrepresentations in SRC's Annual Reports and 10–K, and that the Defendants knew or recklessly failed to know about them. The commonality requirement has thus been satisfied.

### 2.

 Simpson has invoked the Court's pendent (now "supplemental") jurisdiction over his claims pertaining to the North Carolina securities laws as well as claims arising under the common law of North Carolina, i.e. negligent misrepresentation and negligent accounting. In this case, as in numerous other cases where class certification has been granted in actions brought under state laws, Simpson's pendent claims arise out of the same purportedly fraudulent scheme and the same alleged misrepresentations and omissions that underlie Simpson's federal securities claims. *See Kirschner,* 139 F.R.D. at 83; *In re Victor Technologies Sec. Litig.,* 102 F.R.D. 53, 59 (N.D.Cal.1984), *aff'd,* 792 F.2d 862 (9th Cir.1986). As stated by one court, "[i]n both the federal and state claims, plaintiffs will be required to prove that statements or omissions made by defendants were materially false and misleading. Hence, much of the evidence necessary to establish defendants' liability under the federal law claim will be equally necessary for plaintiffs' state law counts." *Kirschner,* 139 F.R.D. at 83.

Because the common law claims mirror the federal claims regarding material misstatements and knowledge, the Court finds that there are common issues which satisfy the requirement of commonality. Furthermore, even though there may be individual issues that need to be addressed in the state claims, this Court finds that considerations of judicial efficiency and economy will be better served by permitting certification of the pendant state law claims. *See id.*

### C. Typicality

 The typicality requirement is met if Simpson's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *Kirschner,* 139 F.R.D. at 79; *Moskowitz,* 128 F.R.D. at 629. The typicality requirement is a safeguard against interclass conflicts, insuring that the named plaintiff's interests are more or less co-extensive with those of the class. *Id.* In this respect, the typicality requirement overlaps with the adequacy requirement since it ensures that the absent class members will be adequately represented. *Id.* Typicality does not mean identical, however. *Id.* Typicality must be analyzed with reference to each of Simpson's claims.

### 1.

DH & S attacks typicality on Simpson's § 10b and Rule 10b–5 claims by stating that

an analysis of Simpson's trading records in SRC and other securities reflect that he did not rely on information disseminated by DH & S or the market price as an indication of the value of SRC's securities. DH & S argues that Simpson is not typical because he is a sophisticated investor who follows a risky, speculative and unconventional investment strategy. DH & S states that Simpson is a contrarian—one who purchases stock when the price is going down in hopes that after the company makes some changes, the price will rise dramatically. DH & S claims that this prevents Simpson from establishing reliance, an essential element of Simpson's Rule 10b–5 claim, thereby rendering him atypical. Furthermore, DH & S argues that Simpson's investment strategy subjects him to unique defenses rendering him an atypical class representative.

 Simpson has brought this cause of action claiming that he relied on the market price of the stock and on the actual financial statements. By relying on the market price of the stock, Simpson argues that the fraud on the market theory is applicable. Fraud on the market obviates the need to prove subjective reliance in open market transactions since the market is interposed between the buyer and seller. *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). As adopted in *Basic,* the fraud on the market theory applies to open and efficient markets and it creates the presumption that:

> [a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action.

*Id.* 485 U.S. at 247, 108 S.Ct. at 991–92. A defendant may rebut this presumption by showing that the price was unaffected by the fraud; or that plaintiff would have made the purchase regardless of the undisclosed information. *Zlotnick v. Tie Communications,* 836 F.2d 818, 822 (3d Cir.1988).

 DH & S argues that: 1) SRC's stock was not traded on an open and efficient market; and 2) it is not logical to presume reliance upon the integrity of the market price of a security when Simpson's strategy does not rely on that price. *Id.* (court will not presume reliance where it is not logical to do so).

Both arguments are fruitless at this stage in the litigation. First, while it may be debatable whether SRC's stock is traded on an open and efficient market, the Court is of the opinion that such an inquiry is simply not appropriate on a motion for class certification. The Court notes that there is tension in lower court opinions regarding the extent to which a court should examine the efficiency of the securities market in question at the class certification stage. *Compare Garfinkel v. Memory Metals, Inc.,* 695 F.Supp. 1397, 1403 (D.Conn.1988) (court should not engage in preliminary review of the merits; "[f]or purposes of class certification, the plaintiffs' allegation that an 'efficient' market was operating ... is sufficient.") *with In re MDC Holdings Sec. Litig.,* 754 F.Supp. 785, 804–805 (S.D.Cal.1990) (court determined that market was not efficient for certain MDC securities; "the court must walk a fine line between examining the complaint for facts and allegations that demonstrate that the class can benefit from the presumption without treading too deeply into the ultimate factual question of whether the market was efficient."). The existence of an efficient market allows a plaintiff to take advantage of the fraud on the market theory of reliance, thus increasing the likelihood that the class will be certified as common issues predominate over individual ones. For those same reasons, defendants are interested in showing that the market for the particular security is *not* efficient and open. While the better practice for plaintiffs wishing to avail themselves of the fraud on the market theory would be to allege facts showing that the instant market is indeed efficient, the Court is of the opinion that a full scale investigation into the efficiency of the market at the class certification stage delves too much into the merits of the case. That inquiry is better made during the summary judgment stage

and/or at trial before the trier of fact.[4] *See Basic*, 485 U.S. at 249 n. 29, 108 S.Ct. at 992 n. 29.

Second, simply because Simpson may be a sophisticated investor and a contrarian does not necessarily mean that the fraud on the market presumption does not apply. *MDC Holdings*, 754 F.Supp. at 802 (differences in investor sophistication do not prevent class certification); *Moskowitz v. Lopp*, 128 F.R.D. at 631 (an investor engaging in takeover speculation does not necessarily mean that the fraud on the market presumption does not apply). *But see Lewis v. Johnson*, 92 F.R.D. 758 (E.D.N.Y.1981). In rejecting defense arguments that sophisticated investors or investors with unique strategies are atypical, courts have stressed that the crucial issue is whether the *claims* of the class representative are typical of the *claims* of the class members, not whether there is a similarity in personal backgrounds or knowledge between the individuals. *See e.g. Keyser v. Commonwealth Nat. Fin. Corp.*, 121 F.R.D. 642, 646 (M.D.Pa.1988).

It might be true that, *if* a contrarian, Simpson may be more likely to have the fraud on the market presumption of reliance rebutted by defendants.[5] However, even if Simpson *is* a contrarian, he would still have the same interest as other class members in establishing the fraud on the market theory.[6] Furthermore, the Court notes that even without the benefit of presumed reliance based on fraud on the market, several courts have held that common issues of law and fact still predominate over individual issues of reliance in securities fraud cases. *See, i.e., Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985) (citing cases and treatises), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2nd Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Because Plaintiff has alleged a fraud on the market theory of reliance and has survived summary judgment on that issue, such a determination need not be made at this time.[7]

### 2.

The issue of reliance is also prevalent with the other federal claims, including § 18, and pendent state law claims. Because the fraud on the market theory is not available for those claims, Simpson must allege and prove actual reliance. *See MDC Holdings*, 754 F.Supp. at 798 (fraud on the market does not apply to § 18 claims, as opposed to § 10(b) claims); *Gruber v. Price Waterhouse*, 117 F.R.D. 75, 81 (E.D.Pa.1987) (fraud on the market theory not applicable to common law claims of securities fraud—plaintiff must prove direct reliance). Many courts have held that although the fraud on the market presumption is not applicable, reliance issues will not preclude class certification because of a lack of typicality when common questions of law or fact predominate. *See e.g. Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 343, 88 L.Ed.2d 290 (1985); *Gruber v. Price Waterhouse*, 117 F.R.D. at 80–81. *See infra* § II.E.). Al-

---

**4.** *See Memorandum Opinion* denying in part Defendant DH & S's motion for summary judgment.

**5.** While Defendants correctly point out that an arguable defense which will distract named plaintiff's attention from common issues *can* render him atypical to defeat class certification, it is not the rule that the Court *must* always deny class certification whenever a potential defense is raised. *Ross v. Bank South, N.A.*, 837 F.2d 980, 991 (11th Cir.), *vacated on other grounds*, 848 F.2d 1132 (1988). At this point, the Court finds Defendant's argument that Simpson is a contrarian debatable at best and will exercise its discretion in favor of class certification.

**6.** *See Memorandum Opinion* denying Defendant DH & S's motion for summary judgment with respect to the fraud on the market theory of

reliance. To take advantage of the fraud on the market theory at trial, Plaintiff must prove: 1) that the defendant made public misrepresentations; 2) that the misrepresentations were material; 3) that the shares were traded on an efficient market; 4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the shares; and 5) that the plaintiff traded the shares between the time the misrepresentations were made and the time the truth was revealed. *See Basic v. Levinson*, 485 U.S. at 248, 108 S.Ct. at 992.

**7.** Of course, this Court pursuant to Rule 23 retains the power to adjust or reconsider its decision regarding class certification as the case develops.

though reliance is an individual issue, the Court finds that individual reliance issues do not render Simpson atypical. As in the analysis of the rule 10b–5 claim, *supra* § II.C.1, the question of whether Defendants, including DH & S, made material misrepresentations, and if so, whether they were made intentionally or recklessly or negligently are common to the entire class and predominate over individual issues of reliance. *Gruber*, 117 F.R.D. at 81. Therefore, the Court finds that Simpson meets the typicality requirement on all of his claims.

### D. Adequacy

The fourth prong of Rule 23(a) determines whether the named plaintiffs will fairly and adequately protect the interests of the class. This requirement has two aspects: whether the named representative will vigorously prosecute the action through qualified counsel and whether the class representatives have conflicting interests with the unnamed class members. *Garfinkel*, 695 F.Supp. at 1405.

There is no dispute that Simpson's counsel is qualified and experienced in the area of securities litigation. Furthermore, Simpson has indicated that counsel has represented classes in a wide-range of contexts. Based on the information presented to the Court, the Court finds that Simpson's counsel is capable, experienced and qualified to conduct litigation on behalf of the class. Therefore, on the present record, the Court finds that the plaintiffs are adequate to represent the class.[8]

### E. Predominance and Superiority

Rule 23(b)(3) requires that common questions of law and fact predominate over questions affecting individual members. In addition, the Court must determine whether the class action device is superior to other methods of adjudication. Each claim must be analyzed.

#### 1.

■ In the § 10b and Rule 10b–5 context, the individual questions in this case involve reliance and damages. Those individual issues become important only if the class can show the common elements of material misstatements and/or omissions and scienter. Furthermore, reliance is a common issue because of the fraud on the market theory. Therefore, the common issues predominate over the individual issues.

Furthermore, the class action device is superior to other methods of adjudicating the § 10b and Rule 10b–5 claims. "Joinder of all class members would be impracticable and duplicative individual trials would impose inordinate burdens on the litigants and the court." *Moskowitz*, 128 F.R.D. at 636.

#### 2.

■ In the remaining federal and state law claims, Simpson must prove individual reliance on behalf of himself and the class. DH & S argues that class certification should be denied as to these claims because such proof would be unwieldy and unnecessary. While individualized reliance will have to be proven, this Court agrees with those courts which have found that the common issues predominate and that considerations of judicial efficiency and economy will be furthered by permitting certification of the pendent state law claims. *See e.g. Kirschner*, 139 F.R.D. at 83 (and cases cited therein); *Keyser v. Commonwealth Nat. Fin. Corp.*, 121 F.R.D. 642 (M.D.Pa.1988). As noted in *Kirschner*, "[i]n the event that individual issues of reliance pose difficulties as to case management at a later stage, there are mechanisms available to effectively litigate the reliance questions, without destroying the efficiency of class proceedings on other issues." 139 F.R.D. at 83 (citing *In re ORFA Sec. Litig.*, 654 F.Supp. 1449, 1462 (D.N.J.1987) (citing cases that approve of the use of hearings, questionnaires, or other procedures to manage the reliance element)). As a result, the Court finds that individual questions of reliance do not predominate over issues common to the claims.

---

**8.** To the extent that the Court must determine whether Simpson has any conflicting interests with the unnamed class members, the typicality requirement analysis, Section II.C., *supra*, sufficiently dealt with those contentions.

### 3.

 DH & S also disputes the superiority of class certification, claiming that the common law claims will require application of the state law of each class member thereby making a class action unmanageable. As an example, DH & S generally offers that state courts apply a variety of different approaches to the right of a third party recipient of an audit opinion to bring suit upon it. At this juncture, it is unclear whether those different approaches would even be applied to the potential class in this case. While there is certainly some law to support the DH & S argument, "denial of certification on this basis ... appears to be the minority approach." *Kirschner*, 139 F.R.D. at 84. Furthermore, many courts have found it inappropriate to decide choice of law issues incident to a motion for class certification. *Id.* This is especially true where it is unclear whether there exists a substantial variation among the states with regard to the common law claims as to outweigh the commonality of other legal and factual issues. *Id.*

This Court finds the analysis in *Kirschner* and other similar cases persuasive. Therefore, the Court will not presently decide the choice of law issue. As a result, Simpson's pendent claims will be certified as a class. Should issues of conflicting state laws or other problems of management arise as to the pendent claims, the Court will reconsider the certification of the those claims at that time. *Id.* at 85 n. 5.

### III.

Lastly, the Court must determine the appropriate class period. Simpson alleges that the period should extend from February 10, 1986 to December 29, 1987.

### 1.

 Although February 10, 1986 was the first day that Simpson bought SRC stock, Simpson has not shown that the purchase was motivated by any false or misleading statements by any of the Defendants. Furthermore, SRC's 1986 financial statements which Simpson claims were critical to his investment decisions had not been issued by

SRC until September, 1986. Therefore, the first time Simpson could have relied on any false or misleading statements or could argue that the fraud on the market theory was applicable was in September 1986. *See Kirschner*, 139 F.R.D. at 81. The Court determines that the starting date of the class is September, 1986.

### 2.

 Simpson alleges that the closing date for the class should be December 29, 1987, the date when SRC made its disclosures. DH & S argues the class period should end on August 4, 1987, the date DH & S publicly announced that it had resigned as SRC's accountants and stated that the 1986 financial statements should not be relied upon.

"... [T]he class period should end when curative information is publicly announced or otherwise effectively disseminated to the market." *Kirschner* 139 F.R.D. at 82 and cases cited therein. *See also Blackie*, 524 F.2d at 894. "[The] test is a preliminary merits determination whether the facts which underlie the gravamen of plaintiff's complaint continue to represent a reasonable basis on which the individual purchaser on the market would rely." *In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 143 (D.N.J.1984), *rev'd on other grounds*, 843 F.2d 1537 (3d Cir.), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). Where the parties dispute the curative effect of a release, such as here, the court should determine whether there is a "substantial question of fact as to whether the release had cured the market or was itself misleading." *Kirschner* 139 F.R.D. at 82. If a substantial question exists, then the broader time for the class period should be certified. *Id.*

The Court finds that as to DH & S, the class period should end on August 4, 1987. By that date, the financial news media disseminated curative information of DH & S's resignation, including DH & S's unequivocal announcement that the 1986 financial statements should no longer be relied upon.[9] At

**9.** The *Wall Street Journal* reported the events at SRC on August 4, 1987 under the following

that point, it was unreasonable for class members to rely on financial statements earlier approved by DH & S. *See Data Access* 103 F.R.D. at 144 (D.N.J.1984). As to the other defendants, the Court finds that the class period should end on December 29, 1987. This conclusion is reached because those defendants allegedly continued to mislead investors, even after DH & S resigned and stated that the 1986 financial statements should not be relied upon. *Id.*

## IV.

The Court will grant Simpson's motion to certify the class as prescribed. Pursuant to Rule 23, the Court retains the power to adjust or reconsider its decision. *See Kirschner,* 139 F.R.D. at 85 n. 5.

headline, "Deloitte Haskins Quits as Specialty's Auditor, Disavows Financial Report." The article included the statement by DH & S that their report on SRC's 1986 financial statement "should no longer be relied upon because of information subsequently coming to (Deloitte's) attention that would have affected (the) report."

Similar stories ran in the local press, including the *Greensboro New and Record* (August 4, 1987 article headlined "Auditor, Investor Leave Firm") and the *Winston–Salem Journal* (August 5, 1987 article headlined "Auditors Back Away From Winston Company).