Stanley **SHERIN**, Individually and on behalf of all others similarly situated

v.

Irving **GOULD**, **Marshall F. Smith** and **Commodore International, Ltd.**

Civ. A. No. 86–3652.

United States District Court, E.D. Pennsylvania.

Feb. 19, 1987.

David Zlotnick, Donald B. Lewis and Michael Needle, Philadelphia, Pa., for plaintiff.

Frederic Yerman, Phillip A. Geraci and Ellen Rosen Rogoff, New York City, for defendants.

## MEMORANDUM

NEWCOMER, District Judge.

I have before me in this securities action a motion by plaintiff for class certification

pursuant to Fed.R.Civ.P. 23. Plaintiff Stanley Sherin alleges that the defendants violated the antifraud provisions of the securities laws by making overly optimistic projections of earnings and sales for Commodore International, Ltd. (Commodore), and by failing to disclose facts which would have indicated that those projections would not be met. In connection with this motion, the parties have stipulated that the proposed class will include, with certain exceptions, "all persons who purchased the common stock of Commodore International, Ltd. during the period August 9, 1984 to a date to be determined by the Court." [1] The parties have further stipulated that the plaintiff Stanley Sherin is an appropriate class representative, and that his counsel are appropriate counsel to the class. I will accept the stipulations of the parties because I believe them to be in accord with the circumstances of the case and the interests of the putative class.

Because of the class certification issues to which the parties have agreed, only one disputed issue remains: the ending date of the class period. The plaintiff claims that the class period extended until January 28, 1985, when "Commodore released its operating results for the quarter ending December 31, 1984 and for the first time made known to investors that the second quarter of its 1985 fiscal year ha[d] been not merely lack luster but nightmarish." Plaintiff's Reply Memorandum at 2. The defendants argue that the class period should properly be closed as of December 21, 1984 when Commodore issued a press release which purported to disclose to investors that it would not meet its projections. As defendants argue: "That press release cured the alleged prior failures to disclose, the market revalued Commodore stock, and all purchasers of Commodore stock after Decem-

ber 21, 1984 purchased with knowledge of the material facts which plaintiff alleges had been withheld." Defendants' Memorandum of Law in Opposition to Motion for Class Certification ("Defendant's Memorandum") at 1–2. Based on my analysis of the record before me now and the arguments of counsel, I believe that the class period should extend from August 9, 1984 until January 28, 1985.

## I. *Factual Background*

For purposes of a class certification motion, the factual allegations contained in the complaint must be accepted as true. Those factual allegations are as follows:

The essence of plaintiff's claims is that during the first nine months of 1984, Commodore was over-optimistic in projecting revenues and earnings for its 1985 fiscal year, which began on July 1, 1984. Plaintiff claims that Commodore announced new products to replace its "aging" product lines and stated that it would ship one of those new products beginning in September, 1984 and begin selling the other new product during the 1985 fiscal year. Amended Complaint at ¶¶ 21–27. Plaintiff alleges that on August 9, 1984 (the beginning of the proposed class period) Commodore projected "substantial" growth in the company's sales and profits during fiscal 1985, and that defendants continued thereafter to release unrealistically optimistic statements about Commodore's earnings and new products. Amended Complaint at ¶¶ 27, 31. Plaintiff claims that during the class period defendants failed to disclose a variety of purported facts concerning Commodore's business, including the "obsolescence" of some of its products, pricing and sales problems, product development problems and inventory problems. Amend-

---

1. According to the parties' stipulation, the following groups would be excluded from the proposed plaintiff class:

(a) Persons who purchased Commodore common stock for the purpose of meeting the requirements of put options for Commodore stock which they had previously sold;

(b) Persons who purchased Commodore stock as part of program trading activity in

which stock purchases and sales are hedged against positions in stock market index futures; and

(c) Defendants, their affiliates, members of the families of the individual defendants, and the legal representatives, heirs, successors or assigns of the defendants.

ed Complaint at ¶ 31. Thus, plaintiff alleges, a "fraud on the market" was committed by the failure to revise the forecasts and by the alleged omissions. The alleged August 9, 1984 misrepresentations begin the class period, a fact to which both parties have stipulated. At that date, the Commodore stock closed at $26.375 per share.

Plaintiff asserts that the class period should not close until January 28, 1985, when Commodore released its operating results for the quarter ended December 31, 1984. Amended Complaint at ¶ 37. However, on December 21, 1984 Commodore publicly announced that it expected its sales and earnings for the quarter ended December 31, 1984 to fall below the prior year's levels. Amended Complaint at ¶ 36. Plaintiff contends that that disclosure, by failing specifically to quantify the decline in sales and earnings, did not cure the alleged misrepresentations. Thus, by seeking to close the class period on January 28, 1985, plaintiff concedes that the alleged fraud was cured no later than that date. The defendant, however, contends that the December 21, 1984 press release actually cured the alleged fraud. Defendants seek to establish their position by reference to both the contents of the December 21 release and the market's reaction to it.

On December 21, 1984, Commodore issued the following press release to the public:

Commodore International Limited announced today that sales of its home computers in Europe are strong, but that North America sales are slower than anticipated due to general market weakness, and that the company expects Christmas Q1984 sales to be below those of Christmas Q1983.

The company's inventory position is balanced in Europe, and up in North America, but well within manageable levels.

Commodore International Limited emphasized that the Christmas 1984 quarter would be the second best sales quarter in the company's 26 year history and that the company remains undisputed volume leader in the home computer market. *See* Plaintiff's Reply Memorandum of Law at 6. The information contained in the release was disseminated through the media. *See, e.g., The Wall Street Journal,* December 24, 1984 at 23 (attached to Plaintiff's Reply Memorandum of Law as Exhibit B).

On December 20, 1984, the day before the press release, Commodore stock sold for $20.25[2], and 215,000 shares were traded. The next day, the day of the press release, Commodore closed at $18.25, two dollars below the previous day's closing price, with over 3,000,000 shares traded.[3] And on December 24, 1984, the next trading day, Commodore fell to $16.50, on a volume of over 467,000 shares. During the weeks between the December 21, 1984 press release and the January 28, 1985 financial disclosure, Commodore's common stock price remained below its December 20, 1984 price. It reached a low of $13.625 on January 23, 1985, and closed at $14.75 on January 25, 1985, the last trading day before the January 28, 1985 statement.

On January 28, 1985 after the close of trading, *see The Wall Street Journal,* Exhibit C, Commodore released its sales and profits figures for the second quarter of fiscal 1985. Those figures disclosed a decline in sales of almost $100 million to $338.7 million, from the previous year's total of $431.4 million. Commodore also disclosed that its earnings had declined by almost 94% to $3.2 million ($.10 per share), from $50.1 million ($1.62 per share) the previous year. In addition, the announce-

---

**2.** On August 9, 1984 the beginning of the class period, Commodore stock closed at $26.375 per share. From that date through October 1984, the price per share fluctuated between $32.875 and $24.625. Beginning in late November 1984, the price began to slip, reaching a low of $18.875 on December 10, 1984.

**3.** According to the Wall Street Journal, the December 21, 1985 press release was issued only after Commodore first learned that an institutional investor had traded 1,300,000 at $17.00 per share earlier in the day. *See* Exhibit B to Plaintiff's Reply Memorandum.

ment indicated that earnings had been reduced by $30 million because of a "product pricing" action to be taken by Commodore, and that inventories had risen from $288 million the previous year to $455 million.

On January 28, 1985, Commodore stock closed at $14.375 per share. After the January 28, 1985 release, on January 29, 1985, the stock closed at $13.00. The volume of trading on January 28, 1985, prior to the announcement, was 192,000 shares, while over 870,000 shares changed hands the day following the announcement.

II. *Legal Analysis*

Fed.R.Civ.P. 23(a)(2) makes the existence of "question of law or fact common to the class" a prerequisite to class certification. Similarly, Fed.R.Civ.P. 23(b)(3) requires that "questions of law or fact common to the members of the class predominate." As stated earlier, the parties have stipulated to all elements necessary for certification save one: the closing date of the class period. Defendant's position is that Commodore's December 21, 1984 press release cured all alleged material misrepresentations and omissions. Defendants therefore contend that common questions cease to predominate for all purchasers of Commodore stock after that date. Plaintiff takes the position that only the release of the second quarter of fiscal 1985 operating results on January 25, 1985 fully cured the overly optimistic pronouncement which preceded.

In a securities class action based on material misrepresentations and omissions to the investing public, the effective dissemination of curative information ends the wrong. *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D.Cal.1982). At that point, subsequent purchasers are charged with knowledge of the true state of business affairs, unhindered by the material misrepresentations and omissions which preceded. Common questions of law or fact arising from the misrepresentations or omissions do not predominate as to those subsequent purchasers, who are therefore excluded from the class. *Cohen v. Uniroy-*

*al, Inc.*, 77 F.R.D. 685, 688 (E.D.Pa.1977). *See also In re AM Int'l Securities Litigation*, 108 F.R.D. 190, 194 (S.D.N.Y.1985); *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 143-44 (D.N.J. 1984); *Peil v. National Semiconductor Corp.*, 86 F.R.D. 357, 369 and n. 12 (E.D. Pa.1980).

Cases in which the parties dispute whether a particular release cured prior misrepresentations, however, require courts to tread a fine line.

> In determining the class period, the court is presented with a somewhat mystifying conundrum: *Eisen* [*v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)] teaches that a court may not look at the merits when determining a class certification motion, yet a court must evaluate some aspects of the merits of plaintiffs' proposed class period to determine the appropriate end points.

*Data Access Systems, supra*, 103 F.R.D. at 143. On the whole, courts have coped with this paradox by determining whether there is "a substantial question of fact as to whether the release had cured the market or was itself misleading." *Friedlander v. Barnes*, 104 F.R.D. 417, 421 (S.D.N.Y. 1984), *citing Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 570-72 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). If such a substantial question exists, then the broader time period will be certified; if not, the date of that release will end the class period.

In the instant case, such a substantial question exists regarding the December 21, 1984 announcement. To be sure, the market reacted drastically to the December 21, 1984 press release. In the two days following that announcement, the Commodore stock price fell $3.75, losing 18.5% of its value at the close of the day preceding the announcement. By contrast, the day after the January announcement of earnings and profits, the stock price fell $1.375 per share, losing 9.4% of its value at the close of the last trading day before that announcement. The price changes following both announcements were more drastic

than typically occurred with Commodore stock, with the volume of shares traded significantly higher as well.

While the market unquestionably reacted more strongly to the December release than to the January announcement, the market did in fact react strongly and negatively to the later announcement as well. This second reaction is significant evidence which supports plaintiff's position, that the December press release did not constitute a complete cure to the alleged misleading representations. Other things being equal, the December release effectively disclosed the true state of affairs, then presumably the January release would not have had as significant an effect on trading as it did. Issues of proof remain. But I cannot conclude, from the market's reaction to the two announcements, standing alone, that the December press release fully cured the misrepresentations alleged in the Amended Complaint.

I reach a similar conclusion when I examine the December press release itself. While that release clearly disclosed some negative news, it did not address either the degree to which sales and profits would decline, or the extent of Commodore's increased inventories. In addition, the release arguably continues its misleadingly optimistic tone, attributing the company's problems to "general market weakness" instead of the internal flaws alleged by the plaintiff.

Based upon all of the evidence before the Court, I conclude that a significant issue remains as to whether the December 21, 1984 press release or the January 28, 1985 announcement cured the fraud alleged by plaintiff. I will therefore certify the class, extending to purchasers before the January 28, 1985 announcement.

An appropriate order follows.

### ORDER

AND NOW, this 19th day of February, 1987, it is hereby Ordered that plaintiff's motion for class certification is GRANTED.

The class is defined as follows:

All persons who purchased the common stock of Commodore International, Ltd. during the period August 9, 1984 to January 28, 1985, except for (a) persons who purchased Commodore common stock for the purpose of meeting the requirements of put options for Commodore stock they had previously sold; (b) persons who purchased Commodore common stock as part of program trading activity in which stock purchases and sales are hedged against positions in stock market index futures; and (c) defendants, their affiliates, members of the families of the individual defendants, any entity in which the defendants have a controlling interest, and the legal representatives, heirs, successors or assigns of the defendants.

Plaintiff shall submit to the Court the proposed notice and plan of dissemination therefor within five days of this Order. Defendants shall respond to plaintiff's plan of notice within three days thereafter.

AND IT IS SO ORDERED.