### In re KIRSCHNER MEDICAL CORPORATION SECURITIES LITIGATION.

Civ. A. No. WN–90–858.

United States District Court, D. Maryland.

July 26, 1991.

William C. Sammons, John B. Isbister, and Tydings & Rosenberg, Baltimore, Md., Liaison Counsel, Steven J. Toll, Andrew N. Friedman, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., Chairmen of Executive Committee, Klari Neuwelt, Robert J. Berg, and Wolf, Popper, Ross, Wolf & Jones, Robert N. Kaplan, Frederic S. Fox, and Kaplan & Kilsheimer, New York City, Members of Executive Committee, for plaintiffs.

J. Thomas Lenhart, Philip J. Harvey, Thomas W. Mitchell, and Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for defendants.

MEMORANDUM

NICKERSON, District Judge.

This securities action was commenced on March 22, 1990, by Michelle Mrdeza and Patrick Magrath, purchasers of common stock of Kirschner Medical Corporation ("Kirschner" or the "company"), against Kirschner and several of its officers and directors. On May 11, 1990, the Court consolidated into this action four similar suits filed by Howard Rosen on April 6, 1990 (WN–90–996), by Daniel L. Berger, IRA on April 9, 1990 (WN–90–1013), by Seymour and Mae Wohl on April 10, 1990 (WN–90–1023) and by Rodney B. Shields on April 12, 1990 (WN–90–1053).

The Consolidated Complaint alleges that Kirschner and the individual defendants [1] violated Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. § 240.10b–5. Plaintiffs contend that defendants disseminated to the investing public a series of materially false and misleading statements regarding Kirschner, its business operations, financial condition, products and future prospects. It is alleged that as a result of these misrepresentations and omissions of material facts, the price of Kirschner stock from November 14, 1988 to April 9, 1990 was artificially inflated. The plaintiffs have also alleged pendent common law claims of fraud, deceit and negligent misrepresentation. (Counts II and III of the Consolidated Complaint).

This matter is now before the Court on plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(a) and (b)(3). (Paper No. 17). The plaintiffs seek to represent a class defined to include all persons who purchased Kirschner common stock during the period November 14, 1988 through and including April 9, 1990 (the "Class Period"), with the exception of defendants, their subsidiaries, persons, affiliates and entities they control, and members of their immediate families. Defendants oppose the motion. (Paper No. 25). After a careful review of the papers, the Court concludes that a hearing is not necessary (Local Rule 105.6) and will grant the motion for class certification.

FACTUAL BACKGROUND

Kirschner is a publicly owned company based in Timonium, Maryland, that develops, designs, manufactures, and markets products used in human and veterinary orthopedic procedures. Kirschner also manufactures and sells surgical tables and surgical lighting. As of May 7, 1990, Kirschner had 2,365,426 outstanding shares of common stock.

On November 14, 1988, Kirschner announced in a press release its results for the third quarter 1988 (ending September 30, 1988). Defendants reported in the release that Kirschner's revenues had increased 202% and net income had increased 85% over revenues and net income for the same period the prior year. At this time, defendants also filed with the SEC Kirschner's Form 10–Q for the third quarter 1988 which reported large increases in the sales of Kirschner's reconstructive products, trauma products, tables and lighting systems, and soft goods, in part due to Kirschner's recent acquisition of certain assets of the Chick Medical Products Division ("Chick") of Professional Medical Products, Inc.

Thereafter, on March 13, 1989, defendants again announced record sales and earnings for both the fourth quarter 1988 and year ended December 31, 1988. The release stated that domestic and international sales were continuing to improve, that shipments of orthopedic implant products in the international market had risen by 300%, and that other products including Chick's surgical tables and new lighting system were "expected to fuel continuing

---

**1.** The individual defendants include: Bruce J. Hegstad, Kirschner's President and Chief Executive Officer and a director during the Class Period, Kirby L. Cramer, Kirschner's Chairman of the Board during the Class Period, and John A. Kravitz, Kirschner's Vice–President, Chief Financial Officer and Treasurer during the Class Period. In this Memorandum, the Court will refer to these individual defendants collectively as the "defendants" or "Kirschner."

rapid growth in 1989." Several days later, on March 27, 1989, Kirschner released its 1988 Annual Report to shareholders which emphasized the company's strong position, "excellent" earnings, and its optimistic future business plans. The next month, on April 17, 1989, the company announced that it had been sued by a competitor, ALM Surgical Equipment Inc. ("ALM"), for patent infringement of one of its lighting products. Kirschner described the suit as without merit and stated that it would be vigorously defended.

Subsequently, defendants announced in press releases and financial statements that Kirschner had achieved record sales and earnings in the first and second quarters 1989. The company also issued a variety of statements concerning the strong demand for its new products, and its substantial backlog of orders.

On October 27, 1989, Kirschner announced in a press release that its earnings for the third quarter 1989 would be substantially less than expected. Defendants, however, attributed this shortfall to temporary factors and stated that the company's growth would resume in the fourth quarter. On November 14, 1989, defendants announced that Kirschner had, in fact, incurred a loss from operations for the third quarter 1989. The company stated that these results were "temporary" and that it expected to return to profitability in the fourth quarter.

Despite these statements, at a meeting with securities analysts the next month the company revealed that there would be a loss in the fourth quarter due to certain costs incurred in Kirschner's Chick division. On January 26, 1990, the company also reported that it had lost a jury verdict in the litigation with ALM concerning the patent infringement allegations against Kirschner.

On April 2, 1990, Kirschner issued a news release stating that it had renegotiated its bank loans and had undertaken a major restructuring. The company disclosed its intention to separate the production of surgical lighting and tables from production of its orthopedic products, and

that the former would be sold or spun off and accounted for as a discontinued operation. A few days later, on April 9, 1990, the company announced in a news release that it had incurred an enormous net loss for the forth quarter and for fiscal year 1989. At that time, the public was informed that Kirschner had sustained a net loss of $14,177,000 or $5.80 per share for the twelve months ended December 31, 1989. Plaintiffs allege that it was on this date it became clear that defendants' prior upbeat predictions concerning Kirschner's products and prospects were false and misleading.

The complaint alleges that Kirschner's third quarter and year end 1988 financial statements, its first, second and third quarter 1989 financial statements and certain public statements made by defendants prior to April 9, 1990 were materially false and misleading when issued and omitted material facts concerning Kirschner's financial condition and the performance of its products. Plaintiffs allege that these statements were designed to and did create an illusion that Kirschner was financially strong, with significant assets and continued strong earning potential. It is alleged that these false and misleading statements artificially inflated the value of Kirschner's common stock. Plaintiffs assert that Kirschner's stock dropped more than 73% from $26¼ per share to approximately $7 to $8 per share as the investing public learned about Kirschner's substantial problems.

## DISCUSSION

It is well-recognized that class actions are particularly appropriate to resolve shareholders claims alleging violations of the federal securities laws and that Rule 23 is to be construed liberally to effectuate that end. *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.1970), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Grace v. Perception Technology Corp.,* 128 F.R.D. 165, 167 (D.Mass.1989); *Moss v. Lane Co.,* 50 F.R.D. 122, 125 (W.D.Va.1970), *aff'd in pertinent part,* 471 F.2d 853 (4th Cir.1973); *Dolgow v. Anderson,* 43 F.R.D. 472, 488 (E.D.N.Y.1968). Nevertheless, all the re-

quirements of Rule 23 must be met in order for the Court to certify a class. In this case, the plaintiffs have premised their class certification motion on Rule 23(b)(3), Fed.R.Civ.P. To maintain a Rule 23(b)(3) class action, the Court must find that the prerequisites set forth in Rule 23(a) are met and that 1) common questions of fact or law predominate and 2) a class action is superior to other methods of adjudications. The Court will first address the requirements of Rule 23(a) and then turn to Rule 23(b)(3).

### A. Prerequisites under Rule 23(a)

Rule 23(a) sets out the first aspect of the standard for certifying a class:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The defendants do not specifically challenge the maintenance of the plaintiff class on any of the four Rule 23 grounds. Although the defendants do raise certain objections to the class, *see infra* at 80, there is no serious dispute that these four prerequisites have been satisfied. Because the Court is required to make specific findings on each of these points, however, each is discussed separately below.

### 1. Numerosity

■ The first prong of Rule 23(a) requires that the class be sufficiently numerous so as to make joinder of all members impracticable. In their Consolidated Complaint, plaintiffs allege that as of May 7, 1990, Kirschner had outstanding 2,365,426 shares of common stock and as of March 31, 1990, there were 1,578 record holders of Kirschner's common stock. Plaintiffs also assert that the class members are geographically dispersed.

While impracticability of joinder is not determined by a numerical test alone, a class of as few as 25 to 30 members raises the presumption that joinder would be impracticable. *Dameron v. Sinai Hosp. of Baltimore,* 595 F.Supp. 1404, 1408 (D.Md. 1984), *aff'd in part and rev'd in part,* 815 F.2d 975 (4th Cir.1987). Moreover, plaintiffs need not demonstrate with precision the number of persons in the purported class to satisfy the requirements that joinder is impracticable where such a conclusion is clear from reasonable estimates. *See Fitzgerald v. Schweiker,* 538 F.Supp. 992, 1000 (D.Md.1982).

In this case, because joinder of all the investors who purchased Kirschner stock during the proposed Class Period is impracticable, and in light of defendants' failure to dispute numerosity, the Court finds that the numerosity requirement has been met.

### 2. Commonality

The second requirement under Rule 23(a) is that the class members have questions of law and fact in common. As this court recognized in *Lewis v. Capital Mortg. Invest.,* 78 F.R.D. 295, 304 (D.Md.1977), a course of repeated misrepresentations will satisfy the commonality requirement:

> It is well-established that a class action is appropriate in securities fraud cases involving similar or identical misrepresentations (even if they are issued at different times). Moreover, the courts generally have been quite liberal in certifying class actions in such cases recognizing that "[i]t is a rare instance that involves but one fraudulent statement...."

(citations omitted); *see also Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Thus, where the same scheme operates on a class of purchasers for an extended period of time, the requirement of (a)(2) will likely be satisfied. *Green v. Wolf Corp.,* 406 F.2d 291, 300 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Here, plaintiffs allege that during the Class Period defendants engaged in a continuing scheme to defraud plaintiffs by disseminating false and misleading information which omitted and misrepresented ma-

terial facts. The plaintiffs allege that common questions of law and fact exist as to the following questions:

(1) Whether the federal securities laws and state laws were violated by defendants' acts, as alleged in the Complaint;

(2) Whether defendants participated in and pursued the common course of conduct complained of;

(3) Whether documents, including those disseminated to the investing public, the shareholders, and/or filed with the SEC during the Class Period omitted and/or misrepresented material facts about the business affairs, financial condition of the future prospects of Kirschner;

(4) Whether defendants acted willfully, recklessly, or negligently in omitting to state and/or misrepresenting material facts or in aiding and abetting the making of such misstatements;

(5) Whether the market price of Kirschner common stock during the Class Period was artificially inflated due to the nondisclosure and/or misrepresentations complained of; and

(6) Whether the members of the Class have sustained damages and, if so, what the proper measure of damages is.

(Paper No. 17 at 18).

The Court finds that these central issues satisfy the commonality requirement as there are questions of law and fact common to the proposed class.

### 3. Typicality

■ Under this requirement, the named class members must present claims that are "typical" of the class. Generally, a class representative must show that his claims " 'arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and that the claims are based upon the same legal theory.' " *Twyman v. Rockville Housing Authority*, 99 F.R.D. 314, 321 (D.Md.1983) (quoting *Smith v. Baltimore & Ohio Railroad Co.*, 473 F.Supp. 572, 580–81 (D.Md. 1979)). Typicality, however, does not require that the claims of the named representatives be "co-extensive with" or "identical to" those of the other class members. Rather, this requirement is satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the named parties and the other members of the class. *National Constructors Ass'n v. National Electrical Contractors Ass'n*, 498 F.Supp. 510, 545 (D.Md.1980), *mod.*, 678 F.2d 492 (4th Cir. 1982).

■ In the present case, plaintiffs allege that they purchased Kirschner stock at a price artificially inflated by the defendants' false and misleading statements. To the extent that all purchasers throughout the Class Period share a common interest in proving plaintiffs' allegations, this is sufficient to make the claims of the class representatives typical of those of the class members. *See Garfinkel v. Memory Metals, Inc.*, 695 F.Supp. 1397, 1404 (D.Conn. 1988); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 609 (W.D.Pa.1983); *see also* 4 Newberg, *Class Actions* § 22.11 (2d ed. 1985 & March 1991 Supp.) Thus, the Court concludes that the typicality requirement has been met. *Lewis*, 78 F.R.D. at 301; *Weiss v. Tenney Corp.*, 47 F.R.D. 283, 293 (S.D.N.Y.1969).

### 4. Adequate Representation

■ The final prong of Rule 23(a) requires that plaintiffs demonstrate that they will "fairly and adequately protect the interests of the class." This requirement has two components: 1) the interests of the plaintiff and other members of the class must coincide; and 2) it must appear that plaintiff and his attorney will vigorously prosecute the action. *Disabled in Action v. Bridwell*, 593 F.Supp. 1241, 1245 (D.Md. 1984), *appeal dismissed*, 820 F.2d 1219 (4th Cir.1987); *Lewis*, 78 F.R.D. at 302.

Both of these considerations have been met here. Defendants have not argued that the claims of the class representatives are antagonistic to those of the proposed plaintiff class, and, in light of the "typicality" discussion above, the claims do not seem to be antagonistic. Nor have defendants challenged the adequacy of plaintiffs' counsel who specialize in complex securi-

ties actions. The Court therefore finds that the named plaintiffs will be fair and adequate representatives of the putative class.

On the basis of the foregoing discussion, the Court concludes that plaintiffs have met all four of the Rule 23(a) requirements.

### B. Requirements under Rule 23(b)(3)

After determining that the plaintiffs have satisfied the prerequisites of 23(a), the next step is to address whether the requirements of 23(b)(3) have been met. Rule 23(b)(3) requires a finding by the court that:

> the questions of law and fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods of fair and efficient adjudication of the controversy.

### 1. Predominance

 Closely related to the commonality and typicality requirements of Rule 23(a) is the predominance requirement of Rule 23(b)(3). In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones. *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 142 (D.N.J.1984), *rev'd*, 843 F.2d 1537 (3d Cir. 1988); *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981); *see also Sandberg v. Virginia Bankshares, Inc.*, 891 F.2d 1112, 1119 (4th Cir. 1989). As was established above, common questions appear to be at the heart of this litigation. Plaintiffs allege that the underlying activities of defendants affected all members of the proposed class in the same manner. More specifically, plaintiffs assert that all the purchasers during the Class Period bought Kirschner stock at a price which was inflated by defendants wrongful dissemination of false and mis-

leading information. Inasmuch as defendants do not contest that plaintiffs have met this requirement, and since common issues clearly predominate over any questions affecting individual members, the Court concludes that this requirement has been satisfied.[2] *See Blackie v. Barrack*, 524 F.2d at 905–08.

### 2. Superiority

The final requirement of Rule 23(b)(3) is "that a class action be superior to other methods for the fair and efficient adjudication of the controversy." Courts have recognized that a class action is the most efficient means of litigating a securities fraud suit where the class "consists of numerous investors, many of whom in all likelihood have individual claims too small to warrant an individual suit." *Klein v. A.G. Becker Paribas, Inc.*, 109 F.R.D. 646, 653 (S.D.N.Y.1986); *see also Green v. Wolf*, 406 F.2d at 301; *Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas), Ltd.*, 94 F.R.D. 147, 150 (N.D.Ill.1982); *Lewis*, 78 F.R.D. at 309. Indeed, defendants do not contend that this is not an appropriate suit for using the class action procedure. In view of the large number of investors who bought Kirschner stock during the Class Period, the prohibitive expense of maintaining individual actions, and the defendants' failure to contest this issue, the Court finds that the proposed class action is the superior method for litigating this controversy.

### C. Defendants' Objections to Certification

The defendants raise two substantive objections to the scope of the class action. These objections do not challenge the appropriateness of the class action format in a general way. Instead, they focus on either the parameters of the Class Period or on the use of the class action for litigating certain state law claims. Each of these objections will be discussed separately below.

---

**2.** The Court will address *infra* at 83 defendants' argument that plaintiffs' common law claims

present individual issues which predominate over any common questions of law and fact.

### 1. Definition of the Class Period

Defendants argue that the Court should redefine the Class Period. Specifically, defendants contend that the Class Period should not commence on November 14, 1988, as requested by plaintiffs, but rather should begin later on April 17, 1989. Defendants also maintain that the period should terminate earlier on January 26, 1990, not on April 9, 1990 as proposed by plaintiffs.

#### a. Starting Date

In arguing that the class should not begin until April 17, 1989, defendants contend that the focus of Consolidated Complaint is on alleged misstatements and omissions that did not occur until after April 17, 1989, the date that Kirschner announced that the ALM suit was without merit. Defendants argue that with the exception of this announcement, the plaintiffs' allegations of misrepresentations do not commence "in any material way until the October 27, 1989 press release that plaintiffs claim disclosed various adverse factors that should have been reported earlier." (Paper No. 25 at 8).

Plaintiffs, however, respond that the focus of the Complaint is not on particular statements made after April 17th, but on defendants' continuous stream of false and misleading statements commencing on November 14, 1988 when Kirschner filed its Form 10–Q with the SEC announcing its third quarter revenues for 1988. According to plaintiffs, the announcements made by Kirschner on November 14, 1988, March 13, 1989 and March 27, 1989 were not only false and misleading *per se* but also constitute part of the continuous stream of false information disseminated by defendants to the public during the Class Period. Therefore, according to plaintiffs, the appropriate starting date for the Class Period is November 14th.

A review of the Complaint reveals that plaintiffs *have* alleged that defendants disseminated a continuous stream of false information beginning on November 14, 1989 when the company filed the allegedly false Form 10–Q and announced its revenues for the third quarter 1988.[3] Plaintiffs correctly point out that defendants' suggestion of April 17, 1989 as an appropriate starting date is based on an alternative view of the facts—that no deception occurred prior to April 17, 1989. Because in a certification motion the Court must accept as true the substantive allegations of the Complaint, *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Blackie v. Barrack*, 524 F.2d at 901 n. 7, the Court will certify the class beginning on November 14, 1988.

#### b. Termination Date

Defendants also challenge the termination date proposed by plaintiffs. They argue that the appropriate date to end the class is January 26, 1990 when Kirschner announced that it had lost a jury verdict in the patent infringement action with ALM. According to defendants, this announcement, along with other prior public statements, "cured" any prior misstatements or omissions made by the company. Specifically, defendants argue that a December 19, 1989 press release in which Kirschner announced that the company would suffer a loss in the fourth quarter "cured" any prior misrepresentations in the company's November 14, 1989 press release and third quarter Form 10–Q in which Kirschner had stated that it would return to profitability in the fourth quarter. Defendants further contend that a January 3, 1990 press release "cured" any prior misstatements made on December 19, 1989 about the possibility of refinancing and the extension of the company's credit line. Finally, defendants assert that on January 26, 1990 when Kirschner announced that it had lost its patent infringement litigation, all alleged prior misleading statements and omissions had been disclosed to the market, thus putting investors on notice of the problems with the company. Under this argument,

---

**3.** As to defendants' fraud by hindsight attack, the Court agrees with plaintiffs that this is a challenge to the facial sufficiency of the complaint and is not properly a defense to a class certification motion.

anyone who purchased Kirschner stock after January 26th did so with adequate warning.

Plaintiffs, on the other hand, argue that the January 26th announcement did not disclose the full extent of the misrepresentations that had occurred previously. According to plaintiffs, it was not until April 9th or 10th that defendants disclosed, among other things, that Kirschner had sustained a net loss of more than $14 million for fiscal year 1989. It was at this time, plaintiffs argue, that Kirschner "cured" its prior misstatements.

■ Courts have held that in a securities class action based on material misrepresentations and omissions to the investing public the class period should end when curative information is publicly announced or otherwise effectively disseminated to the market. See Sherin v. Gould, 115 F.R.D. 171, 174 (E.D.Pa.1987); In re AM Int'l Securities Litigation, 108 F.R.D. 190, 194 (S.D.N.Y.1985); In re Data Access Systems Securities Litigation, 103 F.R.D. at 143–44; McFarland v. Memorex Corp., 96 F.R.D. 357, 364 (N.D.Cal.1982); In re LTV Securities Litigation, 88 F.R.D. 134, 147 (N.D.Tex.1980). At that point, subsequent purchasers are charged with knowledge of the true state of business affairs, and thus common questions of law or fact arising from the misrepresentations or omissions do not predominate as to those subsequent purchasers, who are therefore excluded from the class.

Where the parties dispute whether a particular release cured prior misrepresentations, however, courts must tread a fine line.

> In determining the class period, the court is presented with a somewhat mystifying conundrum. Eisen [v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)] teaches that a court may not look at the merits when determining a class certification motion, yet a court must evaluate some aspects of the merits of plaintiffs' class period to determine the proposed class period.

In re Data Access Systems, 103 F.R.D. at 143. The majority of courts have coped with this dilemma by determining whether there is "a substantial question of fact as to whether the release had cured the market or was itself misleading." Friedlander v. Barnes, 104 F.R.D. 417, 421 (S.D.N.Y.1984) (citations omitted). When such a substantial question exists, then the broader time period will be certified. Id.

In the instant case, such a substantial question exists regarding the January 26th announcement and the earlier releases in December 1989 and January 1990. Although the full texts of these releases have not been presented to the Court, the parties' characterization of them lead the Court to conclude that a reasonable dispute exists as to their curative effect. On this record, these releases appear to be at most partial disclosures of Kirschner's financial condition.

Although the December 19th release announced that the company would suffer a loss in the fourth quarter of 1989, it also reported that Kirschner had refinanced $17 million of its short-term debt and had increased its credit line. This announcement, therefore, arguably continued to mislead investors about the financial condition of the company. Moreover, the January 3rd press release in which the company admitted that it had neither refinanced its debt nor extended its credit line does not appear at this stage to be a "complete" retraction of the prior alleged misstatements made by the company on December 19th. Here, plaintiffs allege a continuing series of false and misleading statements which began on November 14, 1989. In light of these allegations, the January 3rd release does not appear to "cure" all previous misrepresentations. Similarly, the January 26th announcement about the patent infringement suit also does not disclose the full extent of the misrepresentations that allegedly occurred previously.

■ Based upon all the evidence before the Court at this time, the Court concludes that substantial issues of fact remain as to whether these three announcements "effectively cured" any alleged earlier misrepre-

sentations.[4] Since it is improper for the Court to resolve questions of fact going to the merits when deciding the scope and time limits of the class, the Court will certify the class as ending on April 9, 1990. *See Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571–72 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Cruden v. Bank of New York*, [1987–1988] Fed.Sec.L.Rep. (CCH) ¶ 93,624, 1988 WL 9514 (S.D.N.Y.1988); *Weinberger v. Jackson*, 102 F.R.D. 839, 847 (N.D.Cal.1984); *Fine v. Houston Oil Trust*, [1983–1984 Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,422 (S.D.Tex.1983).

### 2. Class Certification for State Law Claims

Plaintiffs have invoked the Court's pendant jurisdiction over their common law claims of fraud, deceit and negligent misrepresentation. (Counts II and III of the Consolidated Complaint). Defendants oppose class certification of these claims arguing that individual issues of reliance will predominate over any common questions of law and fact and a conflict of laws problem is likely to arise.

█ It is well-recognized that Rule 10b–5 and common law fraud actions have similar issues of proof. *See, e.g., Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 479 (9th Cir.1976). As one court has observed, the similarities between the two "outnumber the differences." *Dekro v. Stern Bros. & Co.*, 540 F.Supp. 406, 418 (W.D.Mo.1982). In this case, like in the numerous other cases where certification of pendant state law claims has been granted, plaintiffs' state law claims arise out of the same purportedly fraudulent scheme and alleged misrepresentations and omissions that underlie plaintiffs' federal securities count. *See In re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp.

718, 753 (E.D.N.Y.1986); *In re Victor Technologies Securities Litigation*, 102 F.R.D. 53, 59 (N.D.Cal.), *aff'd*, 792 F.2d 862 (9th Cir.1984). In both the federal and state claims, plaintiffs will be required to prove that statements or omissions made by defendants were materially false and misleading. Hence, much of the evidence necessary to establish defendants' liability under the federal law claim will be equally necessary for plaintiffs' state law counts.

Although plaintiffs may be required to prove individual reliance as to each plaintiff, this Court agrees with those courts which have found that considerations of judicial efficiency and economy will be furthered by permitting certification of the pendant state law claims. *See Keyser v. Commonwealth Nat. Financial Corp.*, 121 F.R.D. 642 (M.D.Pa.1988); *Gruber v. Price Waterhouse*, 117 F.R.D. 75, 81 (E.D.Pa. 1987); *In re ORFA Securities Litigation*, 654 F.Supp. 1449, 1459–62 (D.N.J.1987); *In re Lilco Securities Litigation*, 111 F.R.D. 663, 670 (E.D.N.Y.1986); *In re Energy Systems*, 642 F.Supp. at 753; *Seidman v. Stauffer Chemical Corp.*, [1986–1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,868, 1986 WL 9803 (D.Conn.1986). In the event that individual issues of reliance pose difficulties as to case management at a later stage, there are mechanisms available to effectively litigate the reliance questions, without destroying the efficiency of class proceedings on other issues. *See In re ORFA Securities Litigation*, 654 F.Supp. at 1462 (citing cases that approve of the use of hearings, questionnaires, or other procedures to manage the reliance element). This Court finds, therefore, that individual questions of reliance do not defeat class certification of pendant state law claims.

Defendants also maintain that class certification of the common law claims will require the application of the state law of

---

**4.** Defendants also argue that "nothing of consequence is ... alleged to have happened between January 26, 1990, and April 9, 1990" (Paper No. 25 at 15), and alternatively, that March 22, 1990, the day plaintiffs Michelle Mrdeza and Patrick Magrath filed suit, is an appropriate termination date since, according to defendants, all relevant information was a matter of public

record by that time. The Complaint, however, clearly alleges that on April 2, 1990 defendants again misled the public by announcing that Kirschner had renegotiated its bank loans and had made a decision to implement a major restructuring of the company. (*See* Paper No. 12 at 22). In light of these allegations, the Court rejects these contentions.

each class member thereby rendering a class action unmanageable. Defendants are correct in noting that Senior Judge Northrop of this Court refused to certify a class for the state law claims in *Lewis v. Capital Mortg. Investment*, 78 F.R.D. 295 (D.Md.1977). In denying certification, Judge Northrop reasoned that:

> [s]ince the laws governing common law fraud in the various states are not uniform, ... certification of a class action for common law fraud claims probably would involve this Court not only in a determination of which state law applies as to each class member, but also an interpretation and application of the laws governing common law fraud for most of the states.

*Id.* at 307 (citations omitted).

Denial of certification on this basis, however, appears to be the minority approach. *See, e.g., Cameron v. E.M. Adams & Co.*, 547 F.2d at 478; *Grace v. Perception Technology Corp.*, 128 F.R.D. at 171; *In re Pizza Time Theatre Securities Litigation*, 112 F.R.D. 15, 19 (N.D.Cal.1986); *Dekro v. Stern Brothers & Co.*, 540 F.Supp. at 418–19; *Koenig v. Smith*, 88 F.R.D. 604 (E.D.N.Y.1980); *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 10 (N.D.Ill.1977).

Moreover, since *Lewis*, the Supreme Court decided *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). In that case, the Court held that in order to comply with the requirements of due process a court must have "sufficient contact or aggregation of contacts" to the claims asserted by plaintiffs before applying its law to a class under a choice of law analysis. As one court has stated:

> The *Shutts* opinion merely requires a showing that there are sufficient contacts between the forum state and each individual class member's claims to create forum interests in the litigation such that application of forum law will not be arbitrary or unfair.

*In re Computer Memories Securities Litigation*, 111 F.R.D. 675, 686–87 (N.D.Cal. 1986)

In this case, application of Maryland law to the common law claims is neither arbitrary nor unfair because sufficient contacts exist between the forum state and the claims asserted. Kirschner's principal place of business is located in Maryland and Kirschner's top management, including the individual officer defendants, maintained their offices in Maryland during the Class Period. Further, many of the alleged false and misleading statements upon which the Consolidated Complaint is based were prepared in and disseminated from Maryland. *See Randle v. SpecTran*, 129 F.R.D. 386, 393 (D.Mass.1988); *Gruber v. Price Waterhouse*, 117 F.R.D. at 75; *In re ORFA Securities Litigation*, 654 F.Supp. at 1463–64.

In applying Maryland law to these claims, the Court must also apply the Maryland choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In tort actions, Maryland applies the doctrine of *lex loci delicti*. *Rockstroh v. A.H. Robins Co., Inc.*, 602 F.Supp. 1259, 1262 (D.Md. 1985). Defendants contend that based on Maryland's choice of law rule the Court would be required to apply the law of the state in which each plaintiff purchased Kirschner stock as to the pendant claims.

At this juncture, however, the Court declines to decide the choice of law issue. The Court notes that many courts have found it inappropriate to decide choice of law issues incident to a motion for class certification. *See, e.g., Seidman v. Stauffer Chemical Corp.*, [1986–1987 Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,868 at 94,236; *In re Lilco Securities Litigation*, 111 F.R.D. at 670; *In re Pizza Time*, 112 F.R.D. at 18. Additionally, even if the Court were required to apply the law of other states, it is unclear at this time whether there exists such a substantial variation among the states with regard to the common law claims as to outweigh the commonality of legal and factual issues otherwise present in this litigation. *See In re Energy Systems Equipment Leasing Securities Litigation*, 642 F.Supp. at 753; *In re Lilco Securities Litigation*, 111

F.R.D. at 670; *Dekro v. Stern Bros. & Co.,* 540 F.Supp. at 418–19. Accordingly, plaintiffs' pendant claims will be provisionally certified as a class along with their federal securities claims at this time.[5]

CONCLUSION

For the reasons state above, the Court finds that plaintiffs have satisfied the requirements of Fed.R.Civ.P. 23, and the Court will certify the class defined by plaintiffs with all its exclusions.

Under Fed.R.Civ.P. 23(c)(1), this determination may be altered or amended at anytime before a decision on the merits. The parties shall submit to the Court a jointly proposed Class Certification Order consistent with the *Manual for Complex Litigation, Second,* § 41.41 (1985) within 10 days from the date of this Memorandum.

---

**5.** Of course, should issues of conflicting state laws or other problems of management arise as to the pendant claims at a later stage in the litigation, the Court will consider the continued viability of certification of these state claims at that time. *See In re Energy Systems Equipment Leasing Securities Litigation,* 642 F.Supp. at 753 n. 28; *In re Victor Technologies Securities Litigation,* 102 F.R.D. at 60.